IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ISLAND CITY SNOWMOBILE
& ATV CLUB, INC.,

                              Appellant,                    OPINION AND ORDER

        v.                                                      19-cv-652-wmc

RYAN BROWN,

                              Appellee.

        Creditor-Appellant Island City Snowmobile & ATV Club ("Island City" or "the Club") appeals an order from the United States Bankruptcy Court for the Western District of Wisconsin denying its motion to reopen Debtor-Appellee Ryan Brown's Chapter 7 bankruptcy case. Because the bankruptcy court did not clearly err in finding that the debtor used reasonable diligence in providing the Club notice of his bankruptcy petition through mail to its counsel and to its P.O. Box, this court will affirm the bankruptcy court's order denying reopening.

FACTS

**A. The Club's Civil Action Against the Browns**

        In 2016, the Club filed a complaint in the Circuit Court for Barron County, Wisconsin, against Ryan Brown, his wife at the time, Renee Brown, and their son, Nolan Brown, alleging that they had embezzled funds from the Club.[1] The state court complaint refers to the Club's then physical address of 674 21st Avenue, Cumberland, WI 54829.

---

[1] For clarity purposes, the court will also refer to Ryan Brown as "Debtor" or "Brown," while referred to Renee and Ryan Brown by the first names.

On February 16, 2018, the Club reached a written settlement with Ryan Brown and his son Nolan, while maintaining their claims against Renee.  In exchange for dismissal of the claims against father and son with prejudice and without costs, Ryan Brown agreed to perform a minimum of 50 hours of community service each year for five years or failing that, to entry of a non-dischargeable judgment of $5,000.  In addition, Ryan Brown agreed to pay a lump sum of $14,000 to the Club within approximately one year.  For notice purposes, the settlement agreement listed the Club's address as "Island City Snowmobile & ATV Club, Inc., PO Box 1102, Cumberland, WI 54829."  (Mot. to Reopen, List of Ex. (Bankr. dkt. #28) 8.)[2]

## B.  Brown's Bankruptcy Petition

On April 23, 2018, however, just ten weeks after the parties entered into that settlement agreement and just three weeks after the Club's attorney Todd Smith had obtained a judgment against Renee, Ryan Brown filed a petition for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Western District of Wisconsin.  In his bankruptcy schedules, Brown listed the Club as a creditor and included the Club's physical address as set forth in the state complaint but not the P.O. Box listed for notice in the settlement agreement.  However, among additional parties for notice purposes, Brown also included the firm of attorney Todd Smith, who just represented the Club in the state civil action against all three Browns, listed as "Smith & Smith Ltd., 131 N. Main Street, Rice Lake, WI 54868."  (Bankr. Pet. Schedule E/F (Bankr. dkt. #1) 7.)  As a result, notices of

---

[2] Citations to "dkt." refer to this court's docket, while citations to "Bankr. dkt." refer to the bankruptcy court docket.

Brown's bankruptcy petition were sent to both the Club at its physical address and to the firm address of Attorney Smith.  *Neither* notice was returned as undeliverable.

Apparently, neither the Club on its own nor through Attorney Smith ever objected to Brown's petition, and the bankruptcy court granted a Chapter 7 discharge on July 25, 2018, notice of which was also sent to the Club and Attorney Smith on July 28, 2018.  On February 11, 2019, some 298 days after the bankruptcy had been closed and 389 days after receiving notice of Brown's Chapter 7 bankruptcy, Attorney Smith nevertheless filed a motion for entry of judgment in the Barron County civil case against Brown pursuant to the original terms of the parties' settlement agreement.  Unsurprisingly, in response, Brown's bankruptcy attorney sent a letter notifying the court of Brown's bankruptcy petition and discharge.

### C. The Club's Motion to Reopen Brown's Bankruptcy Case

Approximately two months later, on May 24, 2019, the Club filed a motion in the bankruptcy court to reopen Brown's Chapter 7 case.  (Bankr. dkt. #22.)  The bankruptcy court then held an evidentiary hearing to consider the Club's motion.  During the hearing, Brown testified that there was no mailbox at the Club's physical address.  (Hr'g Tr. (Bankr. dkt. #37-1) 8.)  He also testified that mail for the Club was sent to his wife's residence "up until 2015."  (*Id.* at 11.)  He further testified that in 2015, after his then wife Renee "was convicted with her theft from the bank," the mail stopped immediately," and that he believed another member of the Club, Jeff Cook, "got [the mail] forwarded somewhere." (*Id.* at 12–13.)  Brown went on to testify that he listed the Club's physical address on his schedules because "that address was listed on the [civil complaint], and that's why it was

3

listed on the bankruptcy [petition]" (*id.* at 21), along with attorney Smith's firm as a notice party (Bankr. Pet. (Bankr. dkt. #1) 7).

### D. Findings of the Bankruptcy Court

Based on this testimony, the bankruptcy court found that "it is clear that [by] the end of 2015, mail was no longer received at [Brown's] residence" on behalf of the Club. (Hr'g Tr. (Bankr. dkt. #37-1) 75.)  The court further found that "the debtor does not know where [the mail] went," and that "there is no evidence in the record about exactly what steps were taken [by the Club] to change the address," or "what kind of forwarding orders . . . might have occurred."  (*Id.*)  The court also concluded that it was simply unclear what happened to mail addressed to the physical address of the Club during this period -- there being no testimony "that none of the mail ever received by the club is addressed to its physical location" (*id.* at 75–76) -- nor was there evidence that either the Brown's original bankruptcy notice or discharge notice were ever returned.

The court also found that Attorney Smith was an agent of the Club for notice purposes.  Since "Attorney Smith was employed [by the Club] to pursue collection of . . . [the original] debt [claimed owed by Brown to the Club]" and "he did not withdraw as counsel" from that civil case, having continued to pursue Renee up until three weeks before Brown's bankruptcy filing, the judge held that "the knowledge of Attorney Smith is imputed to the club."  (*Id.* at 83, 86.)  Further, the court found that when Attorney Smith timely received the bankruptcy notice at his firm, "prudence would dictate that he should have contacted his client at least to inquire" about the nature of the notice, rather than simply assume (mistakenly as it turns out) that Brown's bankruptcy would have no impact

4

on debts owed under the settlement agreement.  (*Id.* at 88.)  Specifically, the bankruptcy

judge concluded that:

> given that the case had been closed 298 days, and that
> Attorney Smith had notice, and clearly it should have been
> recent in his memory that the club had a claim against Mr.
> Brown, and given the recency and timing of Attorney Smith's
> involvement in the [civil] case, I find he was the agent of the
> club.

(*Id.* at 87.)  Based on these findings, the bankruptcy court denied appellant's motion to

reopen Brown's bankruptcy case.  This appeal followed.


OPINION

A bankruptcy court's factual findings are reviewed for clear error; its conclusions of

law are reviewed de novo.  *In re DeLong*, 323 B.R. 239, 245 (W.D. Wis. 2005) (appeal from

an adversary proceeding seeking exemption from discharge pursuant to 11 U.S.C. §

523(a)(2)(A)).  "A finding is 'clearly erroneous' when although there is evidence to support

it, the reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed."  *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009)

(quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

On appeal, the Club argues that the bankruptcy court's finding that Brown's

bankruptcy notice to the Club was sufficient is "clearly erroneous" for two reasons.  First,

the Club argues that Brown knew that the Club did not receive mail at its physical address

and also knew of several other addresses where the Club may have adequately received

notice.  Second, the Club argues that the notice sent to attorney Todd Smith should not

have been imputed to the Club because attorney Smith was not actively engaged in the

Club's claim against Brown, and that there was an indication his agency relationship with the Club had terminated.  The court addresses each of these arguments below.

Section 523(a)(3)(B) of the Bankruptcy Code provides that a debt will be exempt from discharge if a creditor is "neither listed nor scheduled . . . in time to permit . . . timely request for a determination of dischargeability . . . unless such creditor had notice or actual knowledge of the case in time for such timely filing and request."  11 U.S.C. § 523(a)(3)(B). Here, there is no dispute that the Club was listed on the schedule as a creditor and its apparent counsel was also listed as a party to receive notice.   (Bnkr. Dkt. #1:24-26.) Although the language of this section is a bit clumsy, the Seventh Circuit, nonetheless, relied on this language in a reviewing a similar appeal of a creditor to assert an untimely challenge to dischargeability.  *In re Herman*, 737 F.3d 449, 453 (7th Cir. 2013).  As the court explained in *In re Herman*, proof of notice requires only that the debtor use "reasonable diligence" under the circumstances to inform a creditor of the bankruptcy petition, and "'bankrupt is not required to exhaust every possible avenue of information in ascertaining a creditor's address.'"  *Id.* (citing *In re Faden*, 96 F.3d 792, 796 (5th Cir. 1996)).  There is no factual basis to overturn the Bankruptcy court's sensible conclusion that Brown used reasonable diligence in ascertaining the Club's address for notice period in two independent ways.

### E.  Notice to the Club's Physical Address

The Club initially emphasizes that "whether a particular method of notice is reasonable depends on the particular [factual] circumstances."  *Faden*, 96 F.3d at 796 (citing *Tulsa Prof. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484, (1988)).  The Club next

6

argues that Brown knew that evidence permits an inference that the Club did not have a mailbox at its physical address and, therefore, listing the physical address in his schedule was not sufficient for notice purposes.  The Club also cites *In re Matter of Smith*, 21 F.3d 660, 664 (5th Cir. 1994), to suggest that Brown was obligated to discern the Club's correct mailing address by "picking up a telephone and asking."  (Appellant's Br. (dkt. #8) 6.)

In *Smith*, the debtors argued that they were unable to "find" their creditor in order to list the debt properly in their personal bankruptcy petition or on their schedules.  21 F.3d at 664.  However, in that case, the creditor was neither listed in the debtors' bankruptcy petition nor on one of their schedules.  *Id.*  Two and one-half years later, debtors filed a petition to place the creditor on the mailing matrix, "and they [also] inserted the wrong address."  *Id.*  As a result of debtors' carelessness, the creditor did not learn of debtors' bankruptcy petition until approximately four years after it was filed.  *Id.*  The bankruptcy court in that case found that not only had the debtors failed to meet the listing or scheduling requirement under § 523(a)(3)(B), but they could have learned the creditors address by "picking up the telephone and concluded that it could not condone such a lack of diligence on the part of the debtors."  *Id.* (citations omitted).

In contrast to *Smith*, there is *no* dispute that Brown both listed the Club as a debtor on the schedule, and the bankruptcy court found "that the debtor did exercise reasonable diligence in using the address in the summons and complaint, [which was] the address of the physical location of the [Club]."  (Hr'g Tr. (Bankr. dkt. #37-1) 87.)  The court made this finding based on evidence that "[Brown's] association with the club ceased about two years before the settlement," and that "[w]hile the club has no mailbox at its physical

location, it is the address used by the club in various ways." (*Id.* at 84–85.)  In particular, the court found:

> It is also clear that mail was delivered to [Brown's] house, ceasing in 2015, and thereafter, the mail was delivered to first Mr. Cook and then later, at some period of time, to a p.o. box. It's also clear from the record that, at least by 2018, a post office box existed, but it's unclear what the date of that was, what arrangements were made for forwarding of change of address, and the like.

(*Id.* at 69–70.)  The court further found that "[t]here is no evidence in the record, as to what occurs if mail is addressed to the physical location of the club."  (*Id.* at 75–76.) Finally, the court found that "[w]hile it is possible the club misplaced the mail or that it may not have been sent to any forwarding address or post office box of the club, that's not the debtor's fault."  (*Id.* at 85.)

In all these material ways, Brown's efforts were both factually and legally unlike those of the debtors in *Smith*.  Brown looked to multiple sources to find the address of the Club.  Regardless, the bankruptcy court's ruling is reasonable in light of the evidence and testimony presented, and it "shall not be set aside unless clearly erroneous, [with] due regard . . . given to the opportunity of the bankruptcy court to judge the credibility of witnesses." *Herman*, 737 F.3d at 455 (citing Fed. Bankr. P. 8013).  Since the findings are logical and consistent with evidence establishing Brown's efforts to notify the Club of his bankruptcy petition, there is no basis to overturn the bankruptcy court's factual finding that Brown acted with reasonable diligence.

### F.  Notice to Attorney Todd Smith as the Club's Agent

Even if the bankruptcy court erred in finding that Brown exercised reasonable

diligence in listing the Club's physical address in his bankruptcy schedules, the court offered an alternative, and arguably stronger, basis for finding reasonable diligence: Brown's notice to Attorney Smith is reasonably imputed to the Club.  The bankruptcy judge explained that

> when an attorney who represents a creditor in matters prepetition, as here, such as in obtaining or collecting a judgment that will be affected by the discharge, that attorney will be the agent of the creditor in the context of the debtor's bankruptcy.  Here, there is no doubt that Attorney Smith represented the club against the debtor prepetition for the purpose of obtaining a judgment that would be affected by a discharge.  Hence, Attorney Smith was the agent of the club in the context of a bankruptcy.

(Hr'g Tr. (Bankr. dkt. #37-1) 83–84.)  In response, the Club argues that:  the notice to Smith "contained no indicia" of why it was sent; he was not representing the Club against Brown at the time the notice was sent; and that he was not an agent of the Club. (Appellant's Br. (dkt. #8) 7–8.)  However, these arguments merely rehash contrary factual findings well within the bankruptcy court's discretion on this record.

As an initial matter, when an attorney is representing a creditor in order to collect a debt outside of a bankruptcy, notice of a bankruptcy petition sent to that attorney by the debtor can be imputed to the creditor.  *See Herman*, 737 F.3d at 454; *see also*, *In re Schicke*, 290 B.R. 792, 803 (10th Cir. BAP 2003) (notice imputed from attorney to creditor where attorney represented creditor in an action against debtor in prior proceeding, and there was no indication that the agency relationship had terminated); *In re Linzer*, 264 B.R. 243, 248 (Bankr. E.D.N.Y. 2001) (notice imputed from attorney to creditor where attorney did not participate in debtor's bankruptcy case but whose activity on behalf of

the creditor in a non-bankruptcy proceeding was significant and ongoing at the time of the bankruptcy).  For notice to be imputed from the creditor's attorney to the creditor, "[t]here must be a sufficient 'nexus between the creditor's retention of an attorney and the creditor's claim against the debtor." *Herman*, 737 F.3d at 454 (quoting *In re Najjar*, No. 2007 WL 1395399, at *4 (Bankr. S.D.N.Y. May 11, 2011)).

The Seventh Circuit in *Herman* looked at several factors in deciding whether notice should be imputed from an attorney to a creditor.  Among the factors were whether "the attorney is the creditor's agent in matters related to the Chapter 7 case"; whether the "attorney represented the creditor in an action against the debtor in a prior proceeding relating to the bankruptcy"; and whether there was an "indication that the agency relationship had been terminated." *Herman*, 737 F.3d at 454.  In that case, the court concluded that there was a sufficient nexus to impute notice to the creditor through its attorney.  Specifically, as here, the court noted that "[m]ere weeks elapsed between the time [creditor's] federal case against [debtor] was dismissed and the time [debtor] filed a bankruptcy petition." *Id.* at 455.  Further, as here, "although [the attorney] was not specifically representing [the creditor] in the bankruptcy case, he was representing [the creditor] in the ongoing claim against [the debtor] related to the bankruptcy." *Id.*  Under these circumstances, the court concluded that "it was reasonable for [debtor] to believe [the attorney] was still representing [the creditor] at the time he filed for bankruptcy." *Id.*

For much the same reasons, the *Herman* factors support a finding that Attorney Smith's notice should be imputed to the Club.  First, Attorney Smith was representing the Club in a matter against Brown dealing with exactly the same debt that was affected by the

10

bankruptcy.  Like *Herman*, Brown's debt was settled "a mere 10 weeks" before Brown filed

his bankruptcy petition, and the entire state case had only ended three weeks before.  (Hr'g

Tr. (Bankr. dkt. #37-1) 82.)  Moreover, Attorney Smith did not withdraw as counsel; on

the contrary, he filed a motion for entry of judgment on behalf of the Club in the state

action against Brown *post*-petition.  Just like in *Herman*, therefore, although Attorney Smith

was not specifically retained in the bankruptcy case, "he was representing [the creditor] in

the ongoing claim against [the debtor] related to the bankruptcy."  737 F.3d at 455.

Finally, Attorney Smith's reasoning was at best muddled in his claimed belief that "he [or

his firm] had potential claims against the debtor, and was receiving notice for that reason."

(Appellant's Br. (dkt. #8) 7.)  Indeed, as the bankruptcy court noted, "if he was uncertain

as to whether or not the Club had been paid, prudence would dictate that he should have

contacted his client at least to inquire."  (Hr'g Tr. (Bankr. dkt. #37-1) 88.)

　　　　For all these reasons, the court finds that there is *no* basis legally or factually to

overturn the bankruptcy court's finding that a sufficient nexus existed between the Club

and Attorney Smith for the notice to him to be imputed to the Club or, at minimum, that

the bankruptcy court did not "clearly err" in so finding.  As the bankruptcy court observed,

this situation and the impact on the Club may be unfortunate, but that does not justify

reopening this Bankruptcy Case.

ORDER

IT IS ORDERED that the ruling of the bankruptcy court is AFFIRMED.

Entered this 29th day of May, 2020.

BY THE COURT:


/s/

_____

WILLIAM M. CONLEY
District Judge